631 A.2d 615

**BERKS COUNTY CHILDREN AND YOUTH SERVICES**

v.

**Margaret ROWAN, Appellant.**

**BERKS COUNTY CHILDREN AND YOUTH SERVICES**

v.

**Noel M. ROWAN, Appellant.**

Superior Court of Pennsylvania.

Argued April 13, 1993.

Filed Aug. 6, 1993.

Reargument Denied Oct. 15, 1993.

Norman E. Dettra, Jr., Reading, for appellants.

Alfred W. Crump, Jr., Reading, for appellee.

Before CIRILLO, KELLY and CERCONE, JJ.

CERCONE, Judge.

These are the consolidated appeals of the orders of the Court of Common Pleas of Berks County, dated August 24, 1992, which required the appellants to pay support for their dependent minor child while in the custody and care of the Berks County Children and Youth Services (BCCYS). This matter presents us with an issue of first impression: whether a minor child who is married, but separated from her husband and presently declared dependent by the lower court, is emancipated thereby relieving her parents from the duty to support her. We hold that, under the facts of this case, the minor child is not emancipated and her parents are responsible for her support.

The facts of this case were aptly set forth by the trial judge in his opinion to this Court:

M.D. is the adopted daughter of [appellants]. She was born on October 9, 1975. In February 1991, M.D. expressed a desire to marry J.S., then age eighteen. The parents were amenable to the marriage but since M.D. was a fifteen year old minor, application was made to the court for permission to marry pursuant to 23 Pa.C.S.A. § 1304. The court granted permission and M.D. and J.S. were married on February 17, 1991.

On June 17, 1991, M.D. contacted [appellee], Berks County Children and Youth Services, because she had run away from her husband's home. She did not want to return to J.S.'s home and she had no other place to reside. On June 18, 1991, [appellee] filed a juvenile petition indicating that M.D. had no place to live, was a truant, and had been referred to the juvenile probation office. [Appellee] recommended that the child be declared a dependent child and that it be granted temporary custody for placement purposes; that the child obtain drug and alcohol evaluations and obtain any recommended treatment; and that the child and [appellants] cooperate with the placement facility and [appellee]. The judge presiding in the case issued an order on June 27, 1991, declaring M.D. to be a dependent child and transferring custody to [appellee].

On November 12, 1992, J.S. filed a divorce action against M.D. which is currently pending.... [Appellee] has filed complaints in support against [appellants], as the parent[s], to pay the total cost of $7,054.00 for M.D.'s placement in care facilities from June 17, 1991, through August 29, 1991.

[Appellants] contend that M.D. became legally emancipated upon her marriage to J.S. so her parents are no longer legally obligated to support her.

The Domestic Relations Hearing Officer concluded that M.D.'s marriage did not affect her parents' duty of support. [Appellants] filed exceptions to this recommendation.

After argument and review of the briefs and record, the court dismissed the exceptions and adopted the recommendation as the order of the court. [Appellants] appeal this order.

Lower court opinions (Nos. 91–1987–00, 91–1988–00), 11/18/92 at 1–3.[1] Our Supreme Court explained our scope of review in child support matters as follows:

1. The certified record in this case contains no transcript of the proceedings in this matter. Rule of Appellate Procedure 1923 provides the means for supplementing the certified record with a statement of the evidence when no transcripts of the proceedings are available. Rule 1923 requires the statement to be submitted to the lower court for

Our scope of review in support matters is well settled. Absent an abuse of discretion, we will not disturb on appeal a properly entered support order. An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."

*Oeler by Gross v. Oeler*, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991).

■ Appellants contend that their daughter's marriage constitutes legal emancipation thereby relieving them of their obligation of support. We cannot agree. Our analysis begins with the pertinent statutes in the Pennsylvania Domestic Relations Code. Liability for support is governed by section 4321 of the Code and provides:

Subject to the provisions of this chapter:

(1) Married persons are liable for the support of each other according to their respective abilities to provide support as provided by law.

(2) Parents are liable for the support of their children who are *unemancipated* and 18 years of age or younger.

approval and for its inclusion in the certified record. Pa.R.A.P. Rule 1923, 42 Pa.C.S.A.

In the present case, the parties have enclosed an agreed upon statement of facts, dated January 4, 1993, in the reproduced record. Although the reproduced record was served upon the lower court on January 8, 1993, the trial court did not approve or include the statement in the certified record as required by Rule 1923. Indeed, since the certified record was transmitted to this Court on December 2, 1992, the trial judge would have been unable to include this statement in the certified record.

Because both parties have agreed to the stipulated facts in the reproduced record, we shall regard as done that which ought to have been done and deem the statement to be properly filed. *See McCormick v. Northeastern Bank*, 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989) (appeal considered on the merits despite failure to reduce trial court order to a judgment). Accordingly, we will rely on the agreed upon statement for those facts in the trial court's opinion and for our discussion of the issue on appeal.

(3) Parents may be liable for the support of their children who are 18 years of age or older.

23 Pa.C.S.A. § 4321. The Code further provides as to emancipated children:

(a) **Emancipated child.**—A court shall not order either or both parents to pay for the support of a child if the child is *emancipated.*

23 Pa.C.S.A. § 4323. The term "emancipated" is not defined within the Code. Past appellate court decisions of this Commonwealth, however, have discussed the term, as well as the nature of a parent's duty to support a minor child, in a variety of circumstances.

Emancipation is a question of fact to be determined by the circumstances presented in each case. *Maurer v. Maurer,* 382 Pa.Super. 468, 475, 555 A.2d 1294, 1297–98 (1989), *allocatur denied,* 522 Pa. 596, 562 A.2d 320 (1989). Nonetheless, a parent has a clear and stringent obligation to support a child aged eighteen or less. *Sutliff v. Sutliff,* 339 Pa.Super. 523, 547, 489 A.2d 764, 776 (1985). Marriage is not a conclusive factor in determining whether a child is emancipated, but is a factor to be considered under the totality of the circumstances. *Marino by Marino v. Marino,* 411 Pa.Super. 424, 437–38, 601 A.2d 1240, 1247 (1992). Further, emancipation is not necessarily a permanent status and the mere fact that a child was once emancipated does not foreclose the divestiture of emancipation when circumstances change. *Maurer,* 382 Pa.Super. at 477, 555 A.2d at 1299. Accordingly, we decline to hold, as the appellants urge, that a minor, once married, remains emancipated *as a matter of law.* Our determination then must focus on whether M.D., who is married but separated and awaiting a final decree of divorce, is emancipated as a factual matter. Because there are no appellate cases in this Commonwealth which discuss the emancipation involving the marriage of a minor child, we look to those cases which discuss emancipation generally.

In *Trosky v. Mann,* 398 Pa.Super. 369, 581 A.2d 177 (1990), a case with a similar procedural posture, the Children's Home

of Reading sought support reimbursement from the adoptive father of a sixteen year-old minor. The minor boy was destructive; he committed various criminal acts, and used alcohol as well as other controlled substances. Eventually, the boy ran away and was later located at a youth center in New Jersey. The father then had the minor committed to a rehabilitation center for treatment of his alcohol and drug dependency. Upon return, he was placed in the Children's Home of Reading. At all times, the minor renounced his status as son of his parents and showed no interest in returning to their home. Moreover, the parents attempted to have the child declare his emancipation in return for regaining possession of his personal belongings. *Id.* at 370–72, 581 A.2d at 178–79.

The Children's Home of Reading sought reimbursement from the parents for amounts expended for the minor's care. However, the father refused to pay, claiming that the child was emancipated. In holding that the minor was not emancipated, we reasoned:

> [T]he actions of the minor-child are not consistent with the presence of "emancipation"—he could not support himself, he sought refuge with a private placement service while recovering from his dysfunction (drug addiction), one of the factors which prompted him to leave his home unilaterally.

*Id.* at 377, 581 A.2d at 182. Because we found the duty to support a minor child with the necessities of life was nearly absolute, we held that the parents were liable for the support of the minor child despite both the child's and parents' intent to extinguish filial bonds. *Id.* at 378, 581 A.2d at 182.

Other cases of this Court have discussed emancipation in the context of support for secondary education.[2] In *Marino by Marino v. Marino,* 411 Pa.Super. 424, 601 A.2d 1240 (1992),

**2.** We are cognizant of our Supreme Court's decision in *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992) which abrogated any parental duty to provide support to a child for secondary education. However, the decision in *Blue* does not invalidate the rationale of those cases in the context of emancipation of children seeking educational support.

we found that a twenty-one year-old student (no longer a minor) was emancipated and could not receive support for college from his father because the son had no real interest in pursuing higher education, and because the son had moved to Arizona to live with his girlfriend. Our panel held that under the facts of that case, the son had emancipated himself. The son was twenty-one years of age and had demonstrated an interest in conducting his own financial affairs. Also, he moved to Arizona to live with his girlfriend in a quasi-marital relationship. Although we declined to declare a child's marriage or quasi-marital status a conclusive factor in determining whether a child is emancipated, we deemed it a factor to be considered under the totality of the circumstances. *Id.* at 437–38, 601 A.2d at 1247. Thus, given his age and desire to be on his own living with his paramour, the Court had no difficulty in finding that the son was emancipated and not entitled to educational support.

In the case of *Maurer v. Maurer, supra*, a father sought to terminate his support obligation to his nineteen year-old son who, upon being released from his commitment in the Army, enrolled in a vocational school. The trial court granted the father's petition, finding that the child was not seeking a college degree and could support himself, as evidenced by his induction into the Army. A panel of this Court reversed the trial court finding that the child was not emancipated. We held that the critical test in determining emancipation in the situation where a child seeks support for education expenses is whether the child is dependent on his parents for support or is independent of such needs. *Maurer*, 382 Pa.Super. at 475, 555 A.2d at 1297. Further, we discussed the concept of emancipation and determined that such status depends on the type of disability from which the minor child is burdened. Thus, there are situations in which a child may be considered emancipated and others in which he may not be considered emancipated. *Id.* at 477, 555 A.2d at 1297 (quoting H.H. Clark, Jr., The Law of Domestic Relations in the United States (2nd Edition 1987), pp. 323–26).

Based on the facts in *Maurer*, we found that the child was not emancipated. The child had sincere and reasonable intentions for acquiring additional training which required his parents to provide assistance to him. Moreover, even though the child may have been emancipated upon his induction into the Army, he became unemancipated upon release from his military commitment. *Id.* at 477, 555 A.2d at 1298–99. Also in *Griffin v. Griffin*, 384 Pa.Super. 188, 558 A.2d 75 (1989), *allocatur denied*, 524 Pa. 621, 571 A.2d 383 (1989), we affirmed the award of educational support to a twenty-one year-old child, holding that she was not emancipated solely because she had a child of her own. We reasoned that the father had not argued that she was married or had left the family home in order to live independently. *Id.* at 197–200, 558 A.2d at 80–81.

It is important to note that while our decisions in *Maurer*, *Marino* and *Griffin* reaffirm well-settled law that emancipation is to be decided as a factual question, they provide little guidance in the present matter. The Courts of this Commonwealth have applied different and less stringent standards to questions concerning educational support than they have applied in the context of support for the necessities of life. *Marino*, 411 Pa.Super. at 431, 601 A.2d at 1244. Thus, our decision must focus on the unique facts of this case as it relates to support for the essential needs of life.

Following our past precedents we find that a minor's marriage weighs heavily in favor of a finding of emancipation. As our caselaw bears out, however, there are varying circumstances which we must consider in determining whether a child is emancipated. These include, but are not limited to, the child's age, marital status, ability to support himself or herself, and desire to live independently of his or her parents. Finally, even though a child may once have been emancipated, we are not precluded from finding that a child is not permanently emancipated. *Maurer, supra.*

In the present case M.D.'s marriage to J.S. weighs heavily in favor of a finding that she was emancipated during the

marriage. During the marriage, the spouses rely on one another for support. Moreover, the marriage evidences a desire to live independently from the control of M.D.'s parents. Regardless of whether M.D. was emancipated from her parents while married and residing with her husband however, it is evident from the record that M.D. left the marriage and subsequently had no means to provide for herself. Furthermore, J.S. has no means with which to support M.D. and, because of her age, it is unlikely that M.D. will be able to support herself. For this reason, M.D. contacted the Berks County Children and Youth Services. Thus, M.D.'s age coupled with her inability to provide for herself sustains the trial court's finding that she was unemancipated during that period of time for which BCCYS seeks reimbursement. *Trosky v. Mann, supra.* The circumstances here are even more compelling than those in *Trosky.* In that case, the parents and the child maintained a hostile attitude toward each other. Here, there is no evidence that the parents lack filial bonds with M.D.[3]

In effect, this case rests upon the factual finding that M.D. is a dependent in need of the necessities of life, i.e., food, clothing and shelter, whose immediate hope is to obtain help either from a public-funded program or from her parents. The cost of providing these necessities should not be charged to the public where the parents of the minor are able to provide for the child's needs. Accordingly, the learned trial judge, the Honorable Arthur E. Grim, did not abuse his discretion in finding that M.D. was unemancipated and by ordering appellants to reimburse BCCYS for sums expended

---

3. Appellants also rely upon pertinent sections of the Pennsylvania Code concerning eligibility for public assistance in support of their argument that M.D. is emancipated. Those provisions deem a minor who has been married to be emancipated thereby entitling him or her to public assistance. 55 Pa.Code § 145.62. However, "[t]he definition and concept of emancipation in the context of children in need of public assistance is not relevant or applicable to those children who can be supported by their parents." *Maurer*, 382 Pa.Super. at 475, 555 A.2d at 1298. Appellants' argument in this regard is baseless.

on behalf of M.D. pursuant to 23 Pa.C.S.A. § 4321(2).[4]

Order affirmed.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that the minor child, under the facts of this case, is not emancipated and her parents are responsible for her support.

As the majority correctly points out, we may only reverse a support order when the trial court abuses its discretion *Oeler by Gross v. Oeler*, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991). This is such a case. The legislature has left for our determination the meaning and parameters of the word "emancipated" as used in 23 Pa.C.S.A. § 4323. Emancipation is a question of fact to be determined by the totality of circumstances encountered in each case. *Marino by Marino v. Marino*, 411 Pa.Super. 424, 601 A.2d 1240 (1992). In the instant case, I feel that the majority has stretched the meaning beyond reasonable bounds.

The facts of this case clearly indicate that M.D. is emancipated from her parents. M.D. and J.S. are a young couple who fell in love. Because M.D. was a minor, application for marriage was made before the Court of Common Pleas of Berks County. After an appearance by M.D., J.S., and their parents, an order was issued authorizing the issuance of a marriage license. M.D. and J.S. resided together as a married couple for nine months until J.S. filed for divorce. They are, however, currently married. However brief, their relationship still carries all the incidents and benefits of marriage.

4. We reserve for another day the question of whether the parents' support obligation under 23 Pa.C.S.A. § 4321(2) is relieved because of the spousal support obligation set forth in subsection (1) of section 4321. *See generally Marino*, 411 Pa.Super. at 438 n. 10, 601 A.2d at 1247 n. 10 (in dicta the court stated that under section 4321 of the Domestic Relations Code married persons become emancipated from their parents as support rights exist between spouses). Appellants never raised this issue; but merely raised the issue of M.D.'s emancipation. Moreover, M.D.'s husband, J.S., has no means or assets with which to support M.D.

M.D.'s conduct certainly illustrates a contempt for acting in a mature and adult fashion. *Marino, supra,* 411 Pa.Super. at 439 n. 12, 601 A.2d at 1248 n. 12. Her actions indicate not only to her parents, but to the world that she intends to be treated as an adult. Indeed, the law affords certain protections to minors. However, M.D. decided to forego such protections in exchange for the benefits and advantages of married life. When the need to protect the minor no longer exists, then the protection should be terminated. *See Maurer v. Maurer,* 382 Pa.Super. 468, 555 A.2d 1294 (1989). The support rights claimed under 23 Pa.C.S.A. § 4322 should therefore be denied. Section 4321 of the Domestic Relations Code fortifies this position by appearing to indicate that a couple become emancipated from their parents after marriage because support rights come from the spouses. *Marino, supra,* 411 Pa.Super. at 438 n. 10, 601 A.2d at 1247 n. 10; *See also Krakovsky v. Krakovsky,* 400 Pa.Super. 260, 583 A.2d 485 (1990).

This attitude towards marriage emanates from Biblical times:

> "Therefore shall a man leave his father and his mother, and shall cleave unto his wife: and they shall be one flesh."

*Genesis* 2:24.

While I recognize that marriage is not a dispositive factor in determining emancipation as a matter of law, it is nonetheless a factor which must be considered and weighed appropriately. *Marino, supra.* I respectfully suggest that the majority has not considered and weighed this couples' marriage sufficiently.

In light of the foregoing reasons and concerns, I would reverse the trial court's decision.